1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

9

10   YVONNE HARJU, *et al.,*

11              Plaintiffs,

12        v.

13   JOHNSON & JOHNSON, *et al.*,

14              Defendants.

CASE NO. 3:20-cv-06258-BHS-JRC

REPORT AND RECOMMENDATION

NOTED FOR: January 7, 2022

15

16      This matter is before the Court on referral from the District Court and on defendants'

17   motion for partial dismissal of the third amended complaint.  Dkt. 52.

18      Plaintiff Yvonne Harju and deceased former plaintiff Doris Hosking (hereinafter, "Ms.

19   Hosking") are Washington citizens who were implanted with defendants' "Gynecare TVT-

20   Secur" ("TVT-S") and "Gynecare Prosima" ("Prosima") pelvic mesh products to alleviate their

21   medical conditions.  They allegedly suffered complications as a result.  Ms. Hosking's and her

22   husband's estates are represented by plaintiff Donald Hosking, Jr.  Plaintiffs bring suit against

23

24

1  Johnson and Johnson and Ethicon, Inc., New Jersey-based companies who allegedly designed,

2  manufactured, and sold the pelvic mesh products at issue.

3      Plaintiffs assert a variety of claims based on defendants' alleged sale of the pelvic mesh

4  products even while knowing that the products would cause serious medical issues and could not

5  safely be removed after implantation.  The claims relevant to this motion for partial dismissal are

6  plaintiffs' claims for breach of implied warranty (Count IV), fraudulent concealment (Count VI),

7  and constructive fraud (Count VII).  Defendants assert that even after being offered an

8  opportunity to amend the complaint, plaintiffs have failed to plead adequate allegations to

9  support these claims.

10     As to the claim for breach of implied warranty, plaintiffs have not alleged that the sum of

11 the medical providers' and defendants' interactions were directed toward Ms. Hosking and

12 plaintiff Harju in a manner adequate to make them third party beneficiaries.  This is fatal to the

13 breach of implied warranty claim related to plaintiff Harju, and the District Court should dismiss

14 that claim without leave to amend.  However, plaintiffs have alleged a plausible alternative

15 theory under which Ms. Hosking's doctor acted with apparent authority as defendants' agent, so

16 that the claim related to Ms. Hosking survives.  Defendants' remaining arguments that plaintiffs

17 have not shown a sufficient "special relationship" between Ms. Hosking, plaintiff Harju, and

18 defendants fail, and the District Court should not dismiss the fraudulent concealment and

19 constructive fraud claims.  Therefore, the motion to dismiss should be granted in part and denied

20 in part.  Only the implied warranty claim as related to plaintiff Harju should be dismissed.

21 ///

22

23

24

# BACKGROUND

Plaintiffs initiated this matter in December 2020.  Dkt. 1.  The undersigned previously recommended granting in part and denying in part defendants' motion to dismiss the second amended complaint.  *See* Dkt. 37.  As relevant here, the Court recommended dismissing the breach of implied warranty, fraudulent concealment, and constructive fraud claims, with leave to amend.  Dkt. 37, at 2.  The District Court adopted this recommendation, dismissed a manufacturing defect claim, and ordered plaintiffs to file a third amended complaint.  *See* Dkt. 48, at 6, 10–11.

In the third amended complaint, plaintiffs continue to allege a number of defects in defendants' TVT-S and Prosima mesh products that caused Ms. Hosking and plaintiff Harju harm.  Among a laundry list of alleged defects, plaintiffs assert that the products contain polypropylene mesh, a material that is "biologically incompatible with human tissue" and that contributes to "severe adverse reactions to the mesh."  Dkt. 51, at 8.  Plaintiffs further allege that defendants knew of issues such as mesh degradation, deformation, shrinkage, biomechanical issues with the products' design, and rigidity.  They also allege that defendants failed to warn patients or their providers of such issues.  Dkt. 51, at 22, 25–29.  Moreover, plaintiffs assert that the mesh products cannot be easily and safely removed in the event of complications and that despite providers' efforts, plaintiff Harju's and Ms. Hosking's mesh products could not be removed.  Dkt. 51, at 2–3, 17–18.

According to plaintiffs, defendants sold the products as early as 1996, and neither product ever underwent a formal, non-abbreviated FDA safety review.  *See* Dkt. 51, at 9–10.  Then, in 2008, the FDA issued a public health notification describing over 1,000 complaints about the products in the past three years.  Dkt. 51, at 12.  Plaintiffs allege that the FDA continued to issue

1   various warnings and eventually, in 2019, ordered manufacturers to stop selling such pelvic

2   mesh devices.  Dkt. 51, at 15.

3       Plaintiffs claim that throughout this time, and despite knowing of these issues, defendants

4   promoted the TVT-S and Prosima products to physicians and patients as appropriate for women

5   who suffered from pelvic organ prolapse or stress urinary incontinence, such as plaintiff Harju

6   and Ms. Hosking.  Dkt. 51, at 7.  Plaintiffs assert that defendants, who never properly tested the

7   products, knew of issues with their products (such as the problem with using mesh in the

8   products) even before the 2011 FDA safety communication.  Dkt. 51, at 16–17.  Defendants

9   allegedly suppressed information and misled the public and medical community to think that the

10  mesh products were safe and effective.  Dkt. 51, at 17.  Indeed, plaintiffs allege that defendants

11  aggressively marketed the products to both health care providers and consumers and in doing so,

12  misrepresented that the products were "safer and more effective" than non-mesh alternatives.

13  Dkt. 51, at 11.  Defendants also allegedly provided incomplete and misleading training to

14  doctors, in order to increase pelvic mesh product sales.  Dkt. 51, at 18.

15

16  **DISCUSSION**

17  **I. Legal Standard**

18      In reviewing a motion to dismiss, the Court takes all well-pleaded factual allegations as

19  true and considers whether the complaint "states a claim to relief that is plausible on its face."

20  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citation and quotation marks omitted).

21  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory

22  statements, do not suffice." *Id.*

23  ///

24

1    **II.  Breach of Implied Warranty Claim**

2        Count IV of the operative complaint alleges that defendants breached implied warranties

3    and seeks damages under the Washington Products Liability Act, RCW 7.72.030(2).  Dkt. 51, at

4    51.  Defendants argue that this claim fails because plaintiffs have not plausibly alleged a required

5    element—privity of contract.  Dkt. 52, at 4.

6        To prevail on a claim of breach of implied warranty under WPLA, generally, plaintiffs

7    must show "contractual privity between the buyer and seller[.]"  *Thongchoom v. Graco*

8    *Children's Prod., Inc.*, 117 Wash. App. 299, 307 (2003).  Here, however, plaintiffs do not

9    plausibly allege that they purchased the products directly from defendants.  *See* Dkt. 51, at 54

10   (alleging that "Ms. Harju and Ms. Hosking indirectly purchased" the products).

11       In some cases, the requirement of contractual privity may be satisfied where the plaintiff

12   was a third-party beneficiary.  Plaintiffs advance such a theory of liability here.  *See* Dkt. 51, at

13   49.

14       Three Washington cases guide the inquiry into whether one is a third-party beneficiary

15   and can maintain a viable claim for breach of implied warranty.  First, in *Kadiak Fisheries Co. v.*

16   *Murphy Diesel Co.*, 70 Wn.2d 153, 154, 164 (1967), the Washington Supreme Court found that

17   "the evidence conclusively established" a third-party beneficiary relationship between a fishing

18   company and a diesel motor manufacturer, based on the sum of the parties' interactions.

19   Although the fishing company had purchased the diesel motor at issue from an intermediary

20   company, the fishing company was nevertheless a third-party beneficiary as to the manufacturer.

21   This was so because the manufacturer knew the fishing company's "identity, purpose, and

22   requirements"; it engineered the diesel motor for the fishing company's particular specifications;

23   it sent the motor to the fishing company; and it communicated with the fishing company at

24

1    various points and sent employees to the fishing company, including attempting to fix the motor

2    after installation.  *Id.* at 164–65.

3         Second, in *Touchet Valley Grain Growers, Inc. v. Opp & Seibold General Construction,*

4    *Inc.*, 119 Wn.2d 334, 344 (1992), the Washington Supreme Court similarly concluded that the

5    sum of the interactions between a subcontractor who fabricated a metal structure in a failed grain

6    storage building and the building owner showed that the building owner was an intended third

7    party beneficiary.  This was the case even though the owner had contracted with another general

8    contractor to construct the building.  The subcontractor knew the owner's "identify, its purpose,

9    and its requirements for the grain storage building"; it knew that it was using the owner's

10    particular specifications; it delivered the components to the owner's site; and it joined in

11    attempting repairs.  *Id.* at 346–47.

12         Third, in *Urban Development, Inc. v. Evergreen Building Products, LLC*, 114 Wn. App.

13    639, 647 (2002), *as amended* (Jan. 17, 2003), Division One of the Washington State Court of

14    Appeals held that a general contractor was not a third-party beneficiary of a contract with

15    insulation and siding system companies who sold products to a subcontractor for use on a

16    project.  The general contractor "had no interactions with either" subcontractor, and the siding

17    system was not designed for the general contractor's particular requirements.  *Id.* at 648.

18         Guided by these cases, the Court turns to the sum of the interactions among the parties

19    alleged here.  Initially, it should be noted that plaintiffs have not plausibly alleged that

20    defendants knew of Ms. Hosking and plaintiff Harju, in particular, beyond simply being aware

21    that the devices would be implanted in patients who suffered from certain conditions.  Plaintiffs

22    allege that the implanting doctors made defendants aware that "these products would be

23    implanted in these [sic] Ms. Harju and Ms. Hosking for the purpose of treating their SUI and

24

REPORT AND RECOMMENDATION - 6

POP." Dkt. 51, at 53.  But this allegation is conclusory, couched in the language that it is made

"[u]pon information and belief[.]"  Dkt. 51, at 53; *accord Nieuwejaar v. Nationstar Mortg., LLC*,

No. C15-1663JLR, 2016 WL 1436123, at *3 (W.D. Wash. Apr. 12, 2016) (ruling that an

allegation made upon information and belief was, without more, a legal conclusion not entitled to

the presumption of truth).  And, this allegation is rendered implausible by the subsequent

clarification that providers only "likely informed" defendants that the providers were purchasing

the products.  Dkt. 51, at 55.  In short, although the complaint generally makes conclusory

allegations implying that defendants knew of Ms. Hosking's and plaintiff Harju's identities, a

careful reading of the complaint fails to plausibly lead to the conclusion that defendants knew of

these women *in particular* rather than simply that there were patients in whom the devices would

be implanted.

   Second, plaintiffs have not plausibly alleged that defendants manufactured the products

specially for plaintiff Harju and Ms. Hosking, according to these women's own particular

requirements or specifications.

   Third, plaintiffs have not plausibly alleged that defendants delivered the products to Ms.

Hosking and plaintiff Harju, rather than to their providers.  *See* Dkt. 51, at 54 ("Defendants

delivered the . . . products to Ms. Harju and Ms. Hosking's implanting physicians[.]").

   Fourth, plaintiffs have not plausibly alleged that defendants joined in attempts to resolve

issues after implantation.

   For these reasons, the Court again concludes that the allegations amount to a situation

more like *Urban Development, Inc.* (where there was no third-party beneficiary relationship)

than *Kadiak Fisheries Co.* and *Touchet Valley Grain Growers*.  Plaintiffs fail to plausibly allege

facts under which they could establish that plaintiff Harju and Ms. Hosking are third-party

1  beneficiaries of the contracts between their providers and defendants.  The Court also observes

2  that it has already informed plaintiffs of these deficiencies related to the second amended

3  complaint, yet plaintiffs remain unable to allege facts that amount to a third-party beneficiary

4  relationship in the third amended complaint.  *See* Dkt. 37, at 18.

5      Plaintiffs alternatively allege that Ms. Hosking's implanting physician, Dr. Douglas

6  Grier, was defendants' apparent agent.  Dkt. 51, at 56–57.  Defendants respond that these

7  allegations are also inadequate because there are no facts creating a reasonable inference that Ms.

8  Hosking was aware of circumstances leading her to believe that Grier was defendants' agent.

9  Dkt. 56, at 4.

10     Apparent agency occurs when a principal makes objective manifestations leading a third

11 person to believe that the wrongdoer is an agent of the principal.  Restatement, (Second) of

12 Agency § 267 (1957), *cited in D.L.S. v. Maybin*, 130 Wash. App. 94, 97 (2005).  "The doctrine

13 has three basic requirements: the actions of the putative principal must lead a reasonable person

14 to conclude the actors are employees or agents; the plaintiff must believe they are agents; and the

15 plaintiff must, as a result, rely upon their care or skill, to her detriment."  *D.L.S.*, 130 Wn. App.

16 at 99.  "Apparent authority can only be inferred from the acts of the principal and not from the

17 acts of the agent."  *Mauch v. Kissling*, 56 Wash. App. 312, 316 (1989).

18     Although the Court acknowledges that plaintiffs' allegations in this regard are somewhat

19 bare, the Court finds that plaintiffs have adequately alleged facts creating a reasonable inference

20 that Ms. Hosking was aware of circumstances that would lead her to believe that Dr. Grier was

21 defendants' agent.  Plaintiffs allege that defendants have repeatedly retained Dr. Grier as a

22 presenter, lecturer, and trainer regarding their medical devices.  Dkt. 51, at 56.  Where publicly

23 available information could lead a third person to believe that Dr. Grier was defendants' agent,

24

1    the allegations are sufficient to create a viable claim of apparent authority.  *See FutureSelect*

2    *Portfolio Mgmt., Inc. v. Tremont Grp. Holdings, Inc.*, 175 Wn. App. 840, 882 (2013).

3         Thus, only the breach of implied warranty claim as related to plaintiff Harju should be

4    dismissed.  The Court finds that leave to amend should not be granted at present, as the Court has

5    previously identified the issues noted above and plaintiffs have been unable to amend their

6    complaint to cure the issue.

7    **III.  Fraudulent Concealment and Constructive Fraud Claims**

8         Plaintiffs allege that defendants engaged in fraudulent concealment and constructive

9    fraud related to the products.  Dkt. 51, at 62, 71.  Defendants argue that plaintiffs have failed to

10   plausibly plead that they had a special relationship with defendants adequate to support such

11   claims.  Dkt. 52, at 7.  The Court disagrees with defendants.

12        As the Court explained in the last Report and Recommendation, Washington law requires

13   there to be some kind of special relationship between the parties before silence by a defendant

14   can amount to fraudulent concealment.  *See Colonial Imports, Inc. v. Carlton Nw., Inc.*, 121

15   Wn.2d 726, 732 (1993); *Giraud v. Quincy Farm & Chem.*, 102 Wash. App. 443, 453 (2000).

16   Similarly, lack of a fiduciary or quasi-fiduciary relationship is fatal to a claim of constructive

17   fraud.  *Singleton v. Nationwide Ins. Co. of Am.*, No. C20-5688 BHS, 2020 WL

18   6287124, at *2 (W.D. Wash. Oct. 27, 2020) (citing authorities).

19        Plaintiffs assert that here, there is a "quasi-fiduciary and/or confidential" relationship

20   based on defendants selling devices "directly or indirectly" to plaintiff Harju and Ms. Hosking

21   for the purpose of implantation of those devices.  Dkt. 55, at 9.  Plaintiffs point to allegations that

22   defendants gave the providers advertising materials that had demonstrably false information

23   intended to induce implantation and "with the intent that these implanting physicians would

24

1    provide these materials to" plaintiff Harju and Ms. Hosking.  Dkt. 55, at 9.

2         "Washington courts have found the existence of a quasi-fiduciary relationship where . . .

3    a seller has knowledge of a material fact not easily discoverable by the buyer[.]"  16A Wash.

4    Prac., Tort Law And Practice § 19:7 (5th ed.) (footnotes omitted).  Here, in addition to including

5    allegations that defendants provided marketing materials to providers with the intent that the

6    falsehoods in those materials would be passed along to plaintiff Harju and Ms. Hosking,

7    plaintiffs now also include fraud-related allegations that defendants "had knowledge of material

8    facts not easily discoverable" to them.  Dkt. 51, at 64.  Specifically, plaintiffs allege that

9    defendants knew "that the polypropylene mesh used in the [products] degrades,

10   contracts/shrinks, hardens, has rough edges, and otherwise deforms after implantation.  Dkt. 51,

11   at 64.  Although again, plaintiffs' allegations are somewhat bare, these allegations, liberally

12   construed, are now adequate to support a quasi-fiduciary relationship.  *See Sorrell v. Young*, 6

13   Wash. App. 220, 220 (1971) (finding a relationship adequate to support a claim of constructive

14   fraud where the seller failed to disclose an important defect that was not readily apparent to the

15   buyer).  Plaintiffs have gone beyond merely alleging that defendants were in a superior position

16   to alleging that the concealed facts were not easily discoverable to plaintiffs.

17        Defendants cite *Breen v. Ethicon, Inc.*, No. C20-5595 BHS, 2021 WL 673485, at *8

18   (W.D. Wash. Feb. 22, 2021).  In that case, the District Court dismissed a constructive fraud

19   claim for lack of a "special relationship" between the plaintiffs and defendants related to the

20   pelvic mesh product.  However, the Court did not address whether there were allegations of facts

21   not easily discoverable to plaintiffs but known to defendants, and therefore this case is

22   distinguishable.  The remaining cases cited by defendants involve other states' law and are not

23

24

1    persuasive.  *See* Dkt. 52, at 9–10.

2    **IV. Manufacturing Defect**

3    Defendants acknowledge that the Court previously dismissed plaintiffs' manufacturing

4    defect claim and assert that the third amended complaint should be dismissed "to the extent that

5    it seeks to pursue a manufacturing defect claim."  Dkt. 52, at 10.  In response, plaintiffs disavow

6    any manufacturing defect claim and assert that they merely "intend to present evidence that

7    Defendants' manufacturing process and the raw materials used in the manufacture of the TVT-S

8    and Prosima products resulted in defects in the product" in support of their remaining claims.

9    Dkt. 55, at 10.  In light of plaintiffs' admission on the record that they are not pursuing a

10   manufacturing defect claim, the Court should deny the motion to dismiss in this regard.

11

12                                        **CONCLUSION**

13   For the reasons set forth above, the Court recommends granting the partial motion to

14   dismiss in part and denying it in part.  Dkt. 52.  The only claim that should be dismissed is

15   plaintiff's claim for breach of implied warranty on behalf of plaintiff Harju.  Leave to amend this

16   claim should be denied.  The remaining claims in the third amended complaint survive.

17   Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have

18   fourteen (14) days from service of this Report to file written objections.  *See also* Fed. R. Civ. P.

19   6.  Failure to file objections will result in a waiver of those objections for purposes of *de novo*

20   review by the district judge, *see* 28 U.S.C. § 636(b)(1)(C), and can result in a waiver of those

21   objections for purposes of appeal. *See Thomas v. Arn*, 474 U.S. 140, 142 (1985); *Miranda v.*

22   *Anchondo*, 684 F.3d 844, 848 (9th Cir. 2012) (citations omitted).  Accommodating the time limit

23

24

1    imposed by Rule 72(b), the Clerk is directed to set the matter for consideration on **January 7,**

2    **2022,** as noted in the caption.

3            Dated this 22nd day of December, 2021.

4

5                                                    J. Richard Creatura
                                                    Chief United States Magistrate Judge
6

7                                                    .